UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JERRY K.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:22-cv-02255-MJD-SEB |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY ON JUDICIAL REVIEW**

Claimant Jerry K. requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and Supplemental Security Income ("SSI") under Title XVI of the Act. *See* 42 U.S.C. § 423(d); 42 U.S.C. § 1382. For the reasons set forth below, the Court **REVERSES** the decision of the Commissioner.

---

[1] In an attempt to protect the privacy interest of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

## I. Background

Claimant applied for DIB and SSI in November 2020, alleging an onset of disability as of June 2, 2020. [Dkt. 7-2 at 12.] Claimant's applications were denied initially and again upon reconsideration, and a hearing was held before Administrative Law Judge Lauren G. Burstein ("ALJ") on April 6, 2022. *Id.* On April 18, 2022, ALJ Burstein issued her determination that Claimant was not disabled at the alleged onset date of June 2, 2020, but that, upon reaching advanced age, he became disabled as of April 6, 2022. *Id.* at 20. The Appeals Council then denied Claimant's request for review on September 28, 2022. [Dkt. 12 at 3]. Claimant timely filed his Complaint on November 22, 2022, seeking judicial review of the ALJ's decision. [Dkt. 1.]

## II. Legal Standards

To be eligible for benefits, a claimant must have a disability pursuant to 42 U.S.C. § 423.[2] Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a sequential, five-step analysis: (1) if the claimant is engaged in substantial gainful activity, he is not disabled; (2) if the claimant does not have a "severe" impairment, one that

---

[2] DIB and SSI claims are governed by separate statutes and regulations that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to those that apply to DIB.

2

significantly limits his ability to perform basic work activities, he is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three, and is able to perform his past relevant work, he is not disabled; and (5) if the claimant is not found to be disabled at step three, cannot perform his past relevant work, but can perform certain other available work, he is not disabled. 20 C.F.R. § 404.1520. Before continuing to step four, the ALJ must assess the claimant's residual functional capacity ("RFC") by "incorporat[ing] all of the claimant's limitations supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (citing *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)). If, at any step, the ALJ can make a conclusive finding that the claimant either is or is not disabled, then he need not progress to the next step of the analysis. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004) (citing 20 CFR § 404.1520(a)(4)).

In reviewing a claimant's appeal, the Court will reverse only "if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). While an ALJ need not address every piece of evidence, he "must provide a 'logical bridge' between the evidence and his conclusions." *Varga*, 794 F.3d at 813 (quoting *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010)). Thus, an ALJ's decision "will be upheld if supported by substantial evidence," which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). This Court may not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the ALJ. *Burmester v.*

*Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Where substantial evidence supports the ALJ's disability determination, the Court must affirm the decision even if "reasonable minds could differ" on whether the claimant is disabled. *Id.*

### III. ALJ Decision

ALJ Burstein first determined that Claimant had not engaged in substantial gainful activity since the alleged onset date of June 2, 2020. [Dkt. 7-2 at 14.] At step two, the ALJ found that Claimant had the following severe impairments: "coronary artery disease, status-post myocardial infarction with pacemaker placement, and type II diabetes with diabetic neuropathy." *Id*. At step three, the ALJ found that Claimant's impairments did not meet or equal a listed impairment during the relevant time period. *Id.* at 15. ALJ Burstein then found that, during the relevant time period, Claimant had the residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: the claimant could occasionally climb ramps and stairs and could never climb ladders, ropes, or scaffolds. He should avoid unprotected heights and overhead moving machinery.

*Id.* at 16.

At step four, the ALJ found that Claimant was not able to perform his past relevant work during the relevant time period. *Id*. at 18. At step five, relying on testimony from a vocational expert ("VE"), the ALJ determined that Claimant was able to perform jobs that exist in significant numbers in the national economy, such as mail room (DOT 209.687-026), packer (DOT 222.687-014), and sorter (DOT 727.687-062). *Id*. at 19. Accordingly, ALJ Burstein concluded Claimant was not disabled on the alleged onset date of June 2, 2022. *Id*. The ALJ determined that on April 6, 2022, the claimant's age category changed to "advanced age." 20 CFR 404.1563 and 416.963. The ALJ found that as of that date, considering his age, education,

work experience, and residual functioning capacity, there were no jobs that existed in significant numbers in the national economy that claimant could perform. *Id*. Accordingly, the ALJ found that Claimant became disabled on April 6, 2022. *Id*.

### IV.  Discussion

Claimant argues that he was disabled prior to April 6, 2022, and that this matter should be remanded because the ALJ's application of SSR 16-3p in the assessment of Claimant's subjective symptoms is erroneous because she ignored evidence of recurrent skin wounds.

In arriving at her determination of non-disability, the ALJ evaluated Claimant's subjective symptoms pursuant to 20 C.F.R. § 416.929 and SSR 16-3p. SSR 16-3p describes a two-step process for evaluating a claimant's subjective symptoms. First, the ALJ must determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms. SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017). Second, the ALJ must evaluate the intensity and persistence of a claimant's symptoms, such as pain, and determine the extent to which they limit his ability to perform work-related activities. *Id.* at *3-4. At this step, the ALJ considers the claimant's subjective symptom allegations in light of the claimant's daily activities; the location, duration, frequency, and intensity of pain and limiting effects of other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; treatment other than medication for relief of pain; and other measures taken to relieve pain. 20 C.F.R. § 416.929(c)(3). When assessing a claimant's subjective symptoms, ALJs are directed to "consider the consistency of the individuals own statements. To do so, [they] will compare statements an individual makes in connection with the individual's claim for disability benefits with any existing statements the

5

individual made under other circumstances." SSR 16-3p (S.S.A. Oct. 25, 2017), 2017 WL 5180304, at *8. The ruling also explains that "[p]ersistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent." *Id.* at *9.

The ALJ must justify her subjective symptom evaluation with "specific reasons supported by the record," *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013), and build an "accurate and logical bridge between the evidence and conclusion." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). The Court's review of an ALJ's credibility determination is generally deferential unless "if, after examining the ALJ's reasons for discrediting testimony, we conclude that the finding is patently wrong." *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010). The ALJ's determination may be patently wrong where he fails to "'build an accurate and logical bridge between the evidence and the result.'" *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006) (quoting *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000)). Simply put, an ALJ "must competently explain an adverse credibility finding with specific reasons 'supported by the record.'" *Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015) (quoting *Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015)).

In this case, after summarizing Claimant's hearing testimony about his symptoms and the medical evidence on record, the ALJ explained her subjective symptom evaluation as follows:

> The claimant reported he experiences shortness of breath, difficulty standing, and extremity numbness. Despite these allegations, the claimant reported he is able to take out the trash, wash dishes, sweep and vacuum the floor, make the bed. After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity,

>persistence and limiting effects of these symptoms are not fully supported for the reasons explained in this decision. The evidence in the medical record supports the above residual functional capacity for a reduced range at the light exertional level since the alleged onset date.

[Dkt. 7-2 at 16.] The ALJ then summarized the medical evidence of record, as well as the findings of the vocational expert ("VE"). The ALJ noted that claimant suffered a myocardial infarction in June 2020 and required a pacemaker placement and coronary artery bypass graft surgery with aortic valve replacement. [Dkt. 7-2 at 17.] Claimant also required treatment for a sternal wound infection after his surgery. *Id*. Following the surgery, Claimant reported fatigue and exhibited decreased breath sounds, but by May of 2021, Claimant reported that he was feeling fine in general, the sternal wound was healed, and the coronary artery disease was stable. Id. The ALJ also noted that Claimant was treated with insulin for diabetes, which was uncontrolled but was later reported to be stable by his physician in May of 2021. *Id*.

In May of 2021, Dr. Jacobs, at the request of the State agency, performed an evaluation and found that "Claimant was not able to walk on heels, toes, tandem walk, or squat, but could walk or stand 6 hours out of an 8-hour day with sitting most of the time and lifting or carrying up to 30 pounds on an occasional basis." [Dkt. 7-2 at 17.] The ALJ found this "persuasive in terms of his recommendation for light standing and walking because the limitations were supported by the evidence relied upon." *Id*. However, the ALJ did not find the "remaining restrictions are persuasive because the medical evidence establishes the claimant would be more limited than initially determined." *Id*.

In July and September of 2021, non-examining State agency medical consultants restricted Claimant to a light exertional level of work, with the additional postural limitations of never climbing ladders, ropes, or scaffolds and occasionally performing the remaining postural

activities. *Id*. They further found that Claimant would require an avoidance of hazards. *Id*. The ALJ found the "State agency medical consultants' assessments persuasive because they were supported by the medical evidence relied upon," and "were also consistent with the medical evidence, including the claimant's presentation with complaints of fatigue at times during treatment." *Id*.

Finally, based on the testimony of the vocational expert, the ALJ found that, prior to the established onset date of disability, considering the claimant's age, education, work experience, and residual functional capacity, the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy, and was therefore deemed "not disabled" prior to April 6, 2022. *Id*.

Claimant argues that the ALJ's statement was not an accurate portrayal of his abilities. [Dkt. 12 at 16.] For example, the ALJ reported that Claimant was "able to take out the trash, wash dishes, sweep and vacuum the floor, [and] make the bed," but Claimant testified that he could not stand at the sink to wash dishes, but was able to use the dishwasher. *Id*. Further, he testified that he could stand no longer than ten minutes before having to sit down due to pain, and he dropped things often due to numbness in his hands. *Id*. He also testified that he tended to stumble and fall often due to losing his balance and could not cook because he could not stand for a long time at the stove. *Id*. Additionally, Claimant argues that the ALJ equated the ability to engage in some activities with the ability to work full time, without a recognition that full-time work does not allow for the flexibility to work around periods of incapacitation. *Id*. at 17 (citing *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013)). The Commissioner argues that the ALJ's

reasoning was sufficient to allow the Court to track her reasoning and that higher articulation is not required.

It was error for the ALJ to rely on the fact that Claimant could carry out certain day-to-day activities without exploring the manner or frequency in which he carries them out. Further, the ALJ erred by failing to explain how Claimant's limited activities of daily living, as he performs them, are inconsistent with his alleged symptoms. *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017) ("[T]he ALJ did not explain why doing these household chores was inconsistent with [the claimant's] description of her pain and limited mobility. Nor is any inconsistency obvious, so the ALJ did not substantiate the finding that [the claimant's] daily activities reveal any exaggeration of [the claimant's] limitations."); *Sam K. v. Saul*, 391 F. Supp. 3d 874, 881 (N.D. Ill. 2019) (same). Nor does the ALJ explain how those activities, as Claimant performs them, constitute evidence that Claimant could perform the type of full-time work the ALJ found him capable of. As the Seventh Circuit has explained,

> [t]he critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons (in this case, [claimant's] husband and other family members), and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.

*Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). Thus, the Seventh Circuit has held that "[w]ithout acknowledging the differences between the demands of such activities and those of a full-time job, the ALJ was not entitled to use [the claimant's] successful performance of life activities as a basis to determine that her claims of a disabling condition were not credible."

*Ghiselli v. Colvin*, 837 F.3d 771, 777-78 (7th Cir. 2016) (citing *Moore v. Colvin*, 743 F.3d 1118, 1126 (7th Cir. 2014); *Bjornson*, 671 F.3d at 647). It was error for the ALJ to do so here.

### V. Conclusion

For the reasons stated above, the Commissioner's decision is **REVERSED** and **REMANDED for further proceedings consistent with this Order**.

SO ORDERED.

Dated: 25 SEP 2023

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on
all ECF-registered counsel of record via
email generated by the Court's ECF system.